The Atlantic City National Bank, prior to closing its doors, was a national bank, empowered to act as executor, c. In pursuance of this power, the bank had created a trust department, presided over by a trust officer and an assistant trust officer, and in pursuance of the Federal Reserve act, as amended by an act of Congress, September 26th, 1918, had set aside in its trust department securities to protect its trust funds. Complainant seeks to have a certain deposit belonging to decedent's estate declared to be a trust fund, entitled to the protection of these securities. He does not ask that, the deposit in question being a trust fund, he have a preference over other creditors. If that were the relief sought by the complainant, he must fail, because the deposit of complainant's decedent was mingled with the general funds of the bank and could not be followed or distinguished. Acuntius v. Steneck Trust Co., 111 N.J. Eq. 81.
A decision depends on the question as to whether or not the bank accepted the office of executor to which it had been appointed by the will of decedent.
The facts upon which a decision rests are that in December of 1930, a Mrs. Donnelly, also known as Thompson, and hereinafter called Mrs. Donnelly, had procured the trust department of the bank to draw a will for her, and she duly executed the same, naming the bank as executor.
Mrs. Donnelly died on January 14th, 1933, at which time the will so as aforesaid executed by her was in the safekeeping of the bank. On January 24th, 1933, complainant, the brother of decedent, who is not administrator cum testamento annexo, notified the bank of his sister's death, and said in his letter:
"As the Atlantic City Bank is to act as the executor of her estate will it be convenient for you to have me call on Saturday, January 28th to meet Mr. Taylor and to discuss matters pertaining to my sister's affairs as I have her bank books and other possessions." *Page 304 
Mr. Taylor, the assistant trust officer, on January, two days later, wrote to complainant, acknowledging receipt of the letter of January 24th, as follows:
"I am in receipt of your letter of January 25th and deeply regret to learn of your sister's death. She executed a will December 20th, 1930, naming this bank as her executor.
"I will be pleased to see you Saturday and would suggest that if the time is convenient to you, that you come to the bank shortly before one o'clock. Your sister mentions real estate in her will and if you have them, I would appreciate your bringing the deeds as well as the bank books with you when you come. If you can find any tax bills, I would appreciate them, also.
 Very truly yours, S. CRAIG TAYLOR, Assistant Trust Officer."
On January 28th (Saturday) complainant appeared at the bank and delivered to the assistant trust officer, Mr. Taylor, the assets of the estate, consisting inter alia, of the passbook of the Atlantic City National Bank, which evidenced a balance of $1,423.81, deposited as a savings account in decedent's name. Mr. Taylor receipted for these assets and after listing them, wrote: "The above listed items are accepted as a part of the estate of Annie C. Thompson, deceased," and subscribed his name, adding thereto "assistant trust officer."
On January 30th, 1933, the following Monday, the bank failed to open, and by action of the United States treasury department, Mr. Slaughter was appointed receiver and still continues in that capacity. The bank did not probate the will, nor did it transfer the moneys in the savings account of decedent or take any other action than as above set forth with reference to an acceptance of the executorship.
In April of 1933, Mr. Slaughter returned to complainant the assets of decedent's estate, the complainant having been appointed administrator cum testamento annexo by reason of the insolvency of the bank and the inability of the receiver to act.
The following propositions of law are conceded: That the bank was not compelled to accept its appointment as executor; that formal acceptance was not necessary and that "an *Page 305 
acceptance may be by matter in pais" (23 C.J. 1028, 1029 §§81, 82, citing Vickers v. Bell, 4 De G.J. S. 274; 46Reprint 924), that "the mere nomination by a testator does not constitute a person an executor, he must accept the trust; an implied acceptance will, however, be sufficient" (Kocher's N.J.Probate Law 208), that "the office of executor being a private one of trust, named by the testator and not by the law, the person nominated may refuse, though he cannot assign the office, and even if in the lifetime of the testator he has agreed to accept the office, it is still in his power to recede." Wms.Ex. (7th Am. ed. — at p. 225[*]).
The question before me is: Did the bank accept the executorship? If it did, the mere fact that, after acceptance, it never actually changed the saving fund account of decedent to an account by some other name, is of no consequence. That was merely a matter of bookkeeping and the question here is not the label given the account but whether or not the deposit, no matter what its label, was held by the bank in the capacity of executor.
That the bank did not probate the will and remained inactive with reference to it does not amount to an acceptance, unless there be some intermeddling, and there is no evidence of any such conduct (other than its receipt of the assets of the estate), and necessarily not, by reason of the fact that the trust department was not functioning under the receivership, which became effective on the Monday following the Saturday when the assets of the estate were deposited with the then open bank.
If the bank accepted, that acceptance must arise out of that which it did, through its assistant trust officer, on the 28th of January.
The assistant trust officer received a letter notifying him of the death of decedent and he replied that the bank had been appointed as executor and he agreed to meet decedent's brother and gave him instructions to bring with him the assets of the estate in his possession. The brother, in compliance with these instructions, delivered to the trust officer of the bank, which had been named executor, the assets of the *Page 306 
estate. The trust officer received them into the possession of the named executor (the bank) and gave an unqualified receipt for them. The trust officer either received them as executor or he had no right to receive them, unless he qualified his receipt by a provision that they were received for some other purpose than that of possession as executor. I do not mean by this that the mere acceptance of the assets, standing alone, would constitute a binding acceptance of the executorship, but that this unconditional acceptance of the assets, in view of the circumstances under which they were accepted, demonstrated that they were received by the trust officer for the bank, which was then accepting the executorship
The letter from Donnelly to the bank called attention to the death and the fact that the bank was executor and, in effect, asked whether the assets of the estate could be turned over to the executor, and that executor, through its trust officer, replied, in effect, "you may turn over the assets to the executor on January 28th," and on that day they were so turned over and so accepted.
It is true that on the 28th a "run on the bank" was in progress and it is true that in between the 28th and the 30th of January the directors determined, or the treasury department determined for them, that the bank should cease to function, but these facts do not relate back to the 28th of January.
It seems to me to be rather far-fetched to contend that there was any qualified acceptance of the assets or that there was any other intention on the part of the bank than, by their receipt, to accept the executorship. The very purpose of creating the trust department was so that the bank could qualify as executor and the success of the department depended on getting a large number of estate, small and large, in order that the volume would make the overhead light and the profits attractive.
It is inconceivable to me that had the bank continued to function there would ever have arisen even the suggestion that the bank, when it accepted the assets of the estate, did not receive them in its capacity as executor. *Page 307 
If the bank did receive the assets of the estate in the capacity of executor and did accept the executorship, and I find as a fact that it did, they were trust funds, and under the Federal Reserve act, the complainant has a lien on the trust funds set apart by the bank as security therefor.
I will advise a decree in accordance herewith.