WARREN COUNTY ORPHANS COURT.

IN THE MATTER OF THE ESTATE OF SAMUEL V. GARRIS, DECEASED.

Decided February 5, 1946.

66

For the exceptant, *Harry Runyon.*

For the accountants, *Joseph W. Roseberry* and *Wilbur M. Rush.*

BOWERS, J.   Joseph W. Roseberry and Anna Kimble, two of the three executors named in the last will and testament and codicil thereto of Samuel V. Garris, deceased, they having duly qualified as such executors of the last will and testament of Samuel V. Garris, deceased, who died on June 21st, 1944, filed their account as such executors, to which account Emmett Garris, remainderman under the terms of the last will and testament of Samuel V. Garris, deceased, has filed nineteen exceptions, which will be considered in their order.

In and by the first exception, exceptant claims that the accounting has been made and filed in the names of Joseph W. Roseberry and Anna Kimble as executors without the joining in or consenting to said accounting of Myrtle Garris, the other executrix named in the last will and testament of Samuel V. Garris, deceased.

The said Myrtle Garris was named one of the executors in the codicil to the will of the said Samuel V. Garris.   It appeared at the hearing that Myrtle Garris is now married and her present name is Myrtle Garris Gordon.   Testimony at the hearing disclosed that Mrs. Gordon was residing, at the time of the demise of Mr. Garris, at Rolling Hills, Alberta, Canada, some three thousand miles from the county seat of Warren County.

Evidence was presented that Joseph W. Roseberry, Esq., one of the executors and proctor for the estate, notified her

of the death of Mr. Garris by letter on June 29th, 1944. The said Samuel V. Garris died on June 21st, 1944. Evidence showed that Mrs. Garris consulted an attorney named C. H. Powlett, Esq., who likewise wrote to Mr. Roseberry for information, to which he replied. There was definite evidence that Mr. Roseberry wrote to Mrs. Gordon on June 24th, 1944, to her attorney, C. H. Powlett, Esq., on July 6th, July 25th and August 18th, 1944, and again to Mrs. Gordon on September 2d, October 9th and December 9th, 1944, and on June 30th, 1945, in which communications the assets of the estate were disclosed and indicated Mrs. Gordon's rights under the will and codicil. In Mr. Roseberry's letters, he disclosed that she had a right to become one of the executors of the estate.

I am of the opinion that Mrs. Gordon did not take advantage of the information given her and showed no inclination to become an executrix of the estate, because, even on June 6th, 1945, at the trial, in answer to a question directed to her in the following language, "Is it your desire to become an executrix of this estate?" her answer was, "Well, I want to see what is going to be done now."

This was nearly a year after the death of Mr. Garris and nearly ten months after the will was admitted to probate on or about August 16th, 1944.

In the case of *Donnelly* v. *Slaughter,* 114 *N. J. Eq.* 302; 168 *Atl. Rep.* 762, and affirmed by the Court of Errors and Appeals, 116 *N. J. Eq.* 542; 174 *Atl. Rep.* 507, it is held that the mere nomination of a person by a testator does not constitute that person an executor nor· must he accept the trust.

Mrs. Gordon made no sincere attempt to become one of the executors and certainly Mrs. Kimble and Mr. Roseberry were not required to wait many months until she made up her mind to qualify or give them a definite decision. It, therefore, being apparent that the said Myrtle Garris, now Myrtle Garris Gordon, not having qualified as an executrix, it was not proper for her to join in or consent to the account filed by the qualified executors, this exception, therefore, will be overruled.

In and by the second exception, exceptant states that the

proceeds of the sale of real estate situate in Wallpack Township, Sussex County, New Jersey, sold to one Virginia N. Bartow for $1,500 does not represent the full value of said real estate.

Before the executors sold this property, they had it appraised by one William M. Cornwall, a licensed real estate broker of New Jersey, who stated that the house on the premises was in poor condition, needed repairs, and that the fair value would be $1,500. The affidavit signed by Mr. Cornwall stated that the premises was assessed for $900.

There was nothing in the testimony at the hearing which would indicate that the consideration was not fair in this case, and, therefore, this exception will be overruled.

In and by the third exception, exceptant states that the proceeds of the sale of real estate situate in Knowlton Township, Warren County, New Jersey, sold to one Warren Roth for $8,000, does not represent the full value of said real estate.

The executors had negotiated the sale for $8,000 to Mr. Roth but, before consummating the transaction, they had two duly licensed real estate brokers of New Jersey place a value on the premises. They were William M. Cornwall and Levi V. Mather, both of the County of Warren. They testified that the consideration was fair, inasmuch as the premises were in poor condition.

The exceptant presented testimony of two duly licensed real estate brokers, who stated that the value of the premises was more than $8,000. There was not sufficient evidence to indicate that the consideration of $8,000 was unfair.

Executors, like ordinary men of good faith, must act with ordinary discretion and within the scope of their powers. If they use ordinary prudence and caution and act in good faith, they are free from being surcharged for their acts. *Corn Exchange National Bank,* 109 *N. J. Eq.* 169; 156 *Atl. Rep.* 455; *Heisler* v. *Sharpe's Ex'rs,* 44 *N. J. Eq.* 167; 14 *Atl. Rep.* 624.

I find that the executors did act in a reasonable manner and exercised caution in having the premises appraised before consummating the sale. Therefore, this exception will be overruled.

In and by the fourth exception, exceptant states that the proceeds of a sale of a wood lot in Pahaquarry Township, Warren County, to Elizabeth C. Sterrit for the sum of $200, was inadequate. This property was assessed for $160 and it appears that it had been sold for $200 but the party failed to go through with his offer. Finally the executors sold the same for $200.

There is nothing to indicate from the testimony that the executors acted in bad faith nor in any other manner than that of a reasonably cautious person in the sale of said lands. Therefore, this exception will be overruled.

In and by the fifth exception, exceptant states that the proceeds of the sale of real estate known as the Jacksonburg property in Blairstown Township, Warren County, New Jersey, to one Samuel Snover for the sum of $769.09, was unjust and erroneous. This property was assessed for $400 and, before concluding the sale, a real estate broker, William M. Cornwall, appraised the premises at $800.

The testimony would indicate that the consideration was fair and, since the executors used reasonable judgment and approached the matter with caution, this exception, therefore, will be overruled.

In and by the sixth exception, exceptant states that the accountants charged themselves with the payment of $90 on a note given by Mrs. C. Morton and had not collected the balance. The testimony showed that the principal amount was $416 with interest and that $90 had been collected; that the note represented rent from the Bayonne, New Jersey, property.

The Executor Roseberry stated that he was still pressing for payment, and since there is no evidence of negligence and the executors still continuing as trustees and continuing to administer the assets of the estate, this exception will be overruled.

In and by the seventh exception, exceptant states that the accountants failed to charge themselves with certain listed mortgages, they being three in number and given by Charles H. Sliker et ux. for $100, Asa Losey for $500 and Frank B. Losey for $500. The account shows that these mortgages

were voluntarily paid off to the estate by the owners of the properties mortgaged and, therefore, this exception will be overruled.

In and by the eighth exception, exceptant states that the bond and mortgage given by Warren Roth to the estate of Samuel V. Garris on the Hainesburg Hotel property in the sum of $6,000 was not in proper legal form and not consented to or agreed to by the three executors and is not a proper legal investment.

The evidence discloses that two of the executors agreed to take the mortgage and the third one named in the codicil to decedent's will, Mrs. Gordon, had not authority to object as she did not qualify as executrix or trustee.

Six thousand dollars was not an illegal sum to invest from the funds of the estate in this property, sold for $8,000. *N. J. S. A.* 3:16–1 i (a) authorizes a fiduciary, if authorized in the will, to sell real estate, to take back a bond of the purchaser secured by a mortgage on the real estate conveyed to an extent not exceeding eighty per cent. of the sale price. Six thousand dollars, being less than eighty per cent. of the $8,000 sale price, gives these executors authority to consummate such a transaction. The will authorizes them to sell real estate and also to invest the funds of the estate. The phraseology of the mortgage instrument, although not in skillful language, nevertheless, seems to be a binding instrument. Therefore, this exception will be overruled.

In and by the ninth exception, exceptant stated that accountants sold certain household goods for a total sum of $6.85 previous to the taking of the inventory.

At the trial, the items were mentioned and seemed to consist of inexpensive small items and had only a nominal value. The court does not believe the estate suffered any loss through this rather hasty procedure. *Lex non curat de minimis* (the law cares not about trifles). Therefore, this exception will be overruled.

In and by the tenth exception, exceptant states that certain articles of jewelry, especially a silver and gold watch, were not inventoried. Testimony proved that exceptant himself received the gold watch and the silver watch was produced at

the hearing. They being in evidence and acknowledged as a part of the estate, there is no alternative than to overrule this exception.

In and by the eleventh exception, exceptant stated that the decedent had in his possession at his death $250 in cash. This appeared to be a surmise on the part of the exceptant, as no evidence was presented other than that of Mrs. Kimble, who testified that decedent had but $50 in his clothes at the time that he died and that this was duly deposited in the First National Bank of Blairstown to the credit of the estate. Therefore, this exception will be overruled.

In and by the twelfth exception, exceptant states that furniture in the amount of $201.20 in the Hainesburg Hotel was lost to the estate because it went along with the real estate sold to Warren Roth in the transfer of the Hainesburg Hotel to him. The accountants testified that the furniture went with the hotel property and that the sale price of $8,000 covering the Hainesburg Hotel sale included the furniture, which had been itemized at $201.20. It was a part of the transaction. This exception, therefore, will be overruled.

In and by the thirteenth exception, exceptant states that the accountants have not charged themselves with the total income received from the *corpus* of said estate. This item was not pressed at the hearing and, therefore, this exception will be overruled.

In and by the fourteenth exception, exceptant states that the $150 paid to George Kimble, husband of Anna Kimble, one of the executors, for board and lodging was an unjust and erroneous expenditure by the executors. The hearing disclosed that the testator resided with the Kimbles for about seven weeks prior to his demise, that he had a malignant disease and was cared for by members of the Kimble family. He died at their home.

From the evidence, this court is satisfied that a charge in this amount is not unreasonable. It is not a case of mere board to a healthy man, able to care for himself, but, on the other hand was board, lodging and included unpleasant personal attention by members of the Kimble family in caring for one who was terribly ill. There is nothing to indicate

that the charge was excessive. This exception, therefore, will be overruled.

In and by the fifteenth exception, exceptant states that accountants paid to the Executrix Kimble $30, which was unjust.

This expenditure was apparently to reimburse Mrs. Kimble for trips to court in connection with the trial on the caveat filed in connection with the will of decedent. There is nothing to indicate that the charges were unfair or exorbitant. Mrs. Kimble was compelled to come to court through action by others in seeking to prevent the probate of the will of decedent. She should not be expected to pay her own expenses. Although the amount has not been actually paid to her, it seems proper that she be reimbursed for expenses that were not caused through any fault of her own. Therefore, this exception will be overruled.

In and by the sixteenth exception, exceptant states that accountants filed an inventory showing $2,102.10, which was not a correct or proper total of the inventory as appraised by the executors. It seems that the only trouble with this item is that a typographical error of $98.90 was made in addition, which was rectified in an adjustment in the final account. Therefore, this exception will be overruled.

In and by the seventeenth exception, exceptant states that accountants failed to correctly and properly list a complete statement of assets remaining in their hands. The testimony, and likewise the accounting, appears to be in order, listing the assets of the estate, and no testimony appears that would be contradictory. Therefore, this exception will be overruled.

In and by the eighteenth exception, exceptant states that accountants are praying from commission on $8,000, representing the proceeds of the sale of the Hainesburg Hotel property, to which they are not legally entitled. This, of course, is not correct, because *R. S.* 3:11–2; *N. J. S. A.* 3:11–2, authorizes executors to take commissions on a statutory basis and further authorizes the taking of commissions on real estate passing through their hands. *R. S.* 3:11–2.1; *N. J. S. A.* 3:11–2.1. This exception, therefore, will be overruled.

In and by the nineteenth exception, exceptant states that accountants have disposed of real estate owned by decedent contrary to the provisions of his last will and testament, without having the same approved by the court.

A reading of the will definitely authorizes the executors to sell and convey real estate in the following language:

"I hereby revoke the appointment of Eston Garris and Asa Losey having died, as my executors and trustees and in their place I hereby appoint Myrtle Garris, Anna Kimble and Joseph W. Roseberry as executors and trustees of this my Will, with power to collect and invest, sell and convey as may be to the best interest of my estate." &c.

There seems to be no question but that the executors had authority to sell real estate under this clause.

The will created a series of life estates and directed the executors, as trustees, to hold the real estate, keep it in good care and condition, and to pay the income to certain persons for life, &c. The contention of the exceptant seems to be that this would preclude a sale of the real estate. I do not so find the precedents in this state:

In the case of *Randolph* v. *Rafferty*, 92 *N. J. Eq.* 428; 113 *Atl. Rep.* 233, the said Rafferty provided that all of his estate, real and personal, and the rents, interest and profits thereof, were to go to his wife during the term of her natural life and, at her decease or remarriage, to go to his children, &c. The will gave the executors full power to sell real estate. It was argued that this power of sale contained in the will did not comprehend the life estate of the widow and the executors would have no legal right to make a conveyance. The Court of Errors and Appeals decided that this was unsound and that the executor had the right and authority to sell real estate during the existence of the life estate of the widow.

Since the executors have power and authority to convey, as authorized, which they did, this exception, therefore, will be overruled.

A decree may be submitted conforming to this opinion for my consideration.